**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CURTIS D. ASHCRAFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1386-BMJ |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Curtis D. Ashcraft, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding he was not disabled under the Social Security Act. The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 9], and both parties have briefed their respective positions.[1] For the reasons stated below, the Commissioner's decision is affirmed.

## I. Procedural Background

On February 5, 2009, Plaintiff protectively filed applications for supplemental security income and disability insurance benefits. *See* AR 732. The Social Security Administration denied the applications initially and on reconsideration. AR 98-101. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated May 27, 2010. AR 102-118. The Appeals Council remanded the case on July 18, 2011. AR 119-122. Following a second administrative hearing, an ALJ issued a second unfavorable decision on May 22, 2013. AR 7-35.

---

[1] Citations to the parties' submissions reference the Court's CM/ECF pagination.

The Appeals Council denied review of the second decision. AR 1-5. After an appeal to federal court, the United States District Court for the Western District of Oklahoma reversed and remanded the second decision in Case No. CIV-14-1074-R. AR 855-872. A third hearing was held, and an ALJ issued a third unfavorable decision on October 24, 2016. AR 729-760. The Appeals Council denied Plaintiff's request for review. AR 725-728. Thus, the third decision became the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff seeks judicial review of this final agency decision.

## II.    **The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since December 20, 2009, the amended alleged onset date. AR 735.

At step two, the ALJ determined Plaintiff suffered from the severe impairments of degenerative disc disease, osteoarthritis, obesity, depressive disorder, and panic disorder without agoraphobia. *Id.*[2] At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 735-738.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that [Plaintiff] is able to lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently; sit for the total of six hours throughout an eight-hour workday; and, stand and/or walk the total of six hours throughout an eight-hour workday. [Plaintiff] is able to occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs, but

---

[2] The ALJ also found Plaintiff had the non-severe impairments of dental issues, chronic obstructive pulmonary disease, bronchitis, hypertension, high cholesterol, and epigastric issues. *Id.*

never climb ladders, ropes, or scaffolds. [Plaintiff] is able to perform frequent operation of foot controls with the right and left lower extremities and perform frequent reaching, handling, fingering, and feeling with the left and right upper extremities. [Plaintiff] is able to adapt to work situations. [Plaintiff] is able to perform simple and some complex tasks with routine supervision.

AR 738-750. Relying on the testimony of a vocational expert (VE), the ALJ determined Plaintiff is capable of performing past relevant work as a customer service representative and an apartment manager. AR 750-751. In the alternative, and again relying on the testimony of a VE, the ALJ found that Plaintiff had acquired work skills from past relevant work and that there were other jobs that existed in significant numbers in the national economy that he could perform—retail sales clerk, food sales clerk, and parts salesperson. AR 751-752. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 753.

III. **Issues Presented for Judicial Review**

Plaintiff contends the ALJ erred in considering medical opinions, in evaluating Plaintiff's symptoms, in determining the RFC, and determining the mental demands of Plaintiff's past relevant work.

IV. **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything

that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.**     **Analysis**

   **A. Medical Opinions**

   Plaintiff asserts the ALJ erred in her consideration of six opinions from doctors and non-acceptable medical sources. The Court finds no error in the weight given by the ALJ to any of the six opinions.

       **1.  Governing Law**

   A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. *Krauser*, 638 F.3d at 1330. The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Id*. First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id*. When a treating physician's opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this

particular purpose, for the weight assigned." *Id.* As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id.* The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1331 (citation omitted). Further, when a treating physician's opinion is rejected, the ALJ must "articulate specific, legitimate reasons for his decision." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

The opinions of examining consultants are generally entitled to less weight than a treating physician's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Nevertheless, an ALJ is required to properly consider their opinions and provide legitimate reasons for discounting them. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ should consider the same factors contained in the step two analysis for treating physicians. *See Krauser*, 638 F.3d at 1331. However, so long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according [the ALJ's] decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The Agency promulgated Social Security Ruling 06-03p (SSR 06-03p), 2006 WL 2329939 (Aug. 9, 2006) to "clarify how [it] consider[s] opinions from sources who are not 'acceptable medical sources[.]'" SSR 06–03p at *1. Recognizing the growth of managed healthcare in recent years and the increased use of medical sources who are not technically "acceptable medical

sources," the Ruling states that "[o]pinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at \*3. The factors for weighing the opinions of "acceptable medical sources" set out in 20 C.F.R. § 416.927(d) can be applied to "all opinions from medical sources who are not 'acceptable medical sources.'" *Id.* at \*4.

### 2. Opinions Related to Plaintiff's Physical RFC

Plaintiff asserts the ALJ improperly weighed the medical opinions related to Plaintiff's physical condition. Plaintiff's treating physician, Dr. Dwayne Roush, M.D., and two consultative examiners, Dr. John A. Saidi, M.D. and Dr. S.A. Chaudry, M.D., made opinions regarding Plaintiff's work-related physical functioning. AR 499, 642-650, 652-665. Plaintiff asserts the ALJ ignored limitations by all three doctors that would limit Plaintiff to a narrow range of sedentary work and instead made her own medical opinion. Pl.'s Br. 8.

Dr. Roush found that Plaintiff was able to stand and/or walk occasionally—between two and three hours—during an eight-hour workday. AR 499, 749. The basis of Dr. Roush's opinion was Plaintiff's chronic muscular pain and frequent cramping along with generalized joint pain involving his knees, ankles, and arms. *Id.* The ALJ determined:

> As a treating physician, this finding of Dr. Roush is given minimal weight or consideration as unsupported by any clinical signs or any objective medical evidence. Rather, the contemporaneous treatment medical records are silent concerning the same. Additionally, these findings are inconsistent with the treating records document [sic] that [Plaintiff's] physical examination remains within normal limits at each office visit. Further, this statement is inconsistent with the subsequent office visits of March 16, 2011, at which time [Plaintiff] had normal examination and stated he was doing better and was getting more strength with his prescribed medications, as well as the unremarkable clinical findings at his routine medical examination performed on June 2, 2011. Similarly, this statement is not supported by any other objective medical evidence in the record.

AR 749 (internal citations omitted).[3]

Dr. Chaudry examined Plaintiff and made a report on July 31, 2012. AR 652-663. Dr. Chaudry limited Plaintiff to occasional lifting weight between eleven and twenty pounds.[4] AR 655. He further opined that Plaintiff could sit, stand, or walk for twenty minutes at a time. AR 656. Dr. Chaudry also found that Plaintiff could sit for six hours, stand for one hour, and walk for one hour during an eight-hour work day. *Id.*[5] The ALJ considered Dr. Chaudry's opinions and found as follows:

> As an examining physician, Dr. Chaudry's findings and assessment have been given only some limited weight and consideration as not fully consistent with the rather unremarkable contemporaneous examination. In part, the findings of the ability to lift and/or carry 20 pounds, as well as sit for the total of six hours throughout an eight-hour workday are given greater weight as consistent with the evidence in its totality. However, limiting [Plaintiff] to standing and walking one hour each is not consistent with the rather unremarkable findings on examination confirming full ranges of motion of the lower extremities and spine. Likewise, the findings of only mild to moderate degenerative disc disease on [Plaintiff's] lumbar x-rays performed on September 24, 2012 do not correlate with any restriction of walking or standing.

AR 750 (internal citations omitted).

Dr. Saidi completed a medical source statement on February 27, 2012. AR 642-647. Among his opinions, Dr. Saidi noted that Plaintiff could lift between twenty-one and one-hundred pounds occasionally and frequently lift twenty pounds or less. AR 642. He also opined that

---

[3] The Court notes that the ALJ did not explicitly decline to give the opinion controlling weight, but such omission does not constitute reversible error. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

[4] Dr. Chaudry did not make a finding as to Plaintiff's ability to lift ten pounds or less. AR 655.

[5] Dr. Chaudry provided opinions on Plaintiff's capability of performing other work-related activities that were unrelated to the ability to perform light work. AR 657-660. Plaintiff, however, did not challenge the ALJ's consideration of those opinions.

Plaintiff could sit in increments of ten minutes for a total of two hours in an eight-hour work day, stand for increments of fifteen-to-twenty minutes for a total of two hours in an eight-hour work day, and walk for increments of ten minutes for a total of two hours in an eight-hour work day. AR 643. He also noted that Plaintiff could operate foot controls frequently. AR 644.[6] The ALJ considered Dr. Saidi's opinions, and found as follows:

> As an examining physician, the findings and assessment of Dr. Saidi have been given some partial weight and consideration, but not great weight because several of the findings are internally inconsistent with the findings on examination as well as other objective evidence of record. For example, the finding that [Plaintiff] is limited to sitting in increments of 10 minutes is inconsistent with his demonstrated capacity to sit throughout his hearings for 45 minutes to one hour at a time without altering his position. Similarly, Dr. Saidi found [Plaintiff] should have restrictions involving the operation of foot pedals as well as environmental limitations even though he admitted he found no significant findings on contemporaneous examination.

AR 750. Plaintiff alleges the ALJ picked and chose through the medical evidence in substantiating her evaluation of these medical opinions. The Court disagrees.

The exertional limitations contained in Dr. Chaudry and Dr. Saidi's opinions are inconsistent with the RFC—neither doctor's opinion allows Plaintiff to stand or walk for more than six hours, Dr. Saidi opined that Plaintiff could not sit for six hours,[7] and the RFC does not contain durational limitations on sitting, standing, and walking. Thus, it is clear the ALJ rejected Dr. Chaudry and Dr. Saidi's opinions in those areas. An ALJ should explain why he or she rejects some restrictions while adopting others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007);

---

[6] Dr. Saidi made opinions on Plaintiff's capability of performing other work-related activities that were unrelated to the ability to perform light work. AR 644-647. Plaintiff, however, did not challenge the ALJ's consideration of those opinions.

[7] Dr. Chaudry, on the other hand, opined that Plaintiff could sit for six hours, and the ALJ specifically gave that opinion "greater weight." AR 750.

*see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding that an ALJ's decision "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). Here, the ALJ rejected the opinions in the following areas: the amount of time Plaintiff could stand/walk during a workday, the amount of time Plaintiff could sit during a workday, and the length Plaintiff could do each of those activities at a time. The ALJ addressed each of these areas and provided reasons for rejecting them.

With regard to the sitting limitations, the ALJ found that Dr. Saidi's opinion that Plaintiff could only sit for ten minutes at a time was at odds with other evidence of record. Specifically, during the hearings, Plaintiff demonstrated an ability to sit for forty-five minutes to one hour at a time.[8] AR 750. Further, the ALJ gave "greater weight" to Dr. Chaudry's opinion that Plaintiff could sit for six hours in a day because it was consistent with the evidence. *Id.*

The ALJ also adequately analyzed the standing and walking limitations. In her discussion of Dr. Chaudry's opinion, the ALJ found that a limitation to standing and walking for one hour each was not consistent with the findings confirming full ranges of motion of the lower extremities and spine. *Id.* Further, the ALJ found that the findings of only mild-to-moderate degenerative disc disease on Plaintiff's lumbar x-rays "do not correlate with any restriction of walking or standing." *Id.* In her discussion of Dr. Roush's opinion, the ALJ also discounted a finding that Plaintiff could only stand and/or walk for two-to-three hours throughout the workday by noting that the contemporaneous medical records have no clinical signs or other objective medial evidence supporting the finding, Plaintiff's physical examination remained "within normal limits"

---

[8] Plaintiff's hearings occurred on March 23, 2010, April 23, 2013, and July 19, 2016. AR 36-69, 105, 761-803.

at her office visits with Dr. Roush, and that her future medical visits showed improvement with medication. AR 749.[9]

Plaintiff also argues the ALJ improperly rejected Dr. Roush's opinion as not supported by other evidence in the record when the opinion is supported by the opinions of Drs. Saidi and Chaudry. This argument fails because the ALJ considered both Dr. Saidi and Dr. Chaudry's opinions and properly rejected the portions similar to the opinion of Dr. Roush.

### 3. Dr. Al-Botros' Opinion

Plaintiff also asserts the ALJ erred in considering the opinion of Plaintiff's treating psychiatrist, Adonis Al-Botros, M.D. Pl.'s Br. 5-7. Dr. Al-Botros drafted a letter dated August 14, 2009, in which he noted that Plaintiff had been diagnosed with major depressive disorder, panic disorder, and dependent personality disorder, and concluded that Plaintiff "is disabled to an extent that the following applies to his condition: 'inability to engage in any substantial gainful activity by reason of any medically determinable physical oar [sic] mental impairment which can be expected to last for a continuous period of not less than (12) months.[']" AR 627. The ALJ considered the statement as follows:

> The [ALJ] . . . does not treat it as a medical opinion, as it lacks the specificity required for a medical opinion. The doctor's statement that [Plaintiff] cannot work is not a true medical opinion. It does not contain the doctor's judgment about the nature and severity of [Plaintiff's] limitations or any information about what activities

_____

[9] The Court notes that the ALJ did not specifically address Dr. Saidi's findings that Plaintiff was limited in the amount of time she could stand or walk at a time. The ALJ also did not specifically address Dr. Chaudry's finding of the amount of time Plaintiff could sit, stand, or walk. However, the ALJ addressed those topics when discussing the medical opinions of the other doctors who assessed similar limitations. To the extent the ALJ erred by not specifically rejecting these opinions, the error is harmless because the ALJ provided adequate reasoning for rejecting the similar restrictions opined by the other doctors. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (holding finding of harmless error is appropriate when the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

[Plaintiff] is still able to perform. Moreover, the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner . . . .

AR 748-749.

An opinion as to whether an individual is disabled is an issue reserved for the Commissioner. SSR 96-5p, 1996 WL 374183, at *2; *see also Olson v. Berryhill*, 689 F. App'x. 628, 631 (10th Cir. 2017) (unpublished) ("[A] treating physician may not render opinions that are essentially administrative findings . . . dispositive of a case such as whether the claimant is disabled." (internal quotation omitted)). A treating source opinion regarding an issue reserved for the Commissioner is not entitled to controlling weight or special significance.[10] SSR 96-5p, 1996 WL 374183, at *2. Furthermore, "to the extent Dr. [Al-Botros] meant to suggest that [Plaintiff] could not maintain employment, his opinion was not a medical opinion." *Adcock v. Comm'r, SSA*, --- F. App'x ---, 2018 WL 4760095, at *3 (10th Cir. Oct. 2, 2018) (unpublished) (citing 20 C.F.R. § 404.1527(a)(1)). Nevertheless, the ALJ considered the statement and ultimately rejected it by finding Plaintiff could perform work.

Plaintiff contends that because Dr. Al-Botros worked at the same clinic as Megan Wurzer and Jim Womack—who as shown below, had opinions regarding Plaintiff's mental capabilities— the ALJ should have determined whether Dr. Al-Botros endorsed those opinions. Pl.'s Br. 6. Because the ALJ failed to make such a determination, Plaintiff argues that the ALJ had a duty to contact Dr. Al-Botros. *Id.* Plaintiff cites 20 C.F.R. §§ 404.1512(e); 416.927(e) and a case from the Tenth Circuit in support of this argument. These sections of the code were revised, and the

---

[10] Plaintiff cites *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir 2004) for the proposition that the ALJ should have given the opinion due deference and evaluated it based on the appropriate factors. The doctor in *Langley*, however, did not opine directly on the issue of disability. *Id.*

applicable portions were removed from the regulation effective March 26, 2012.[11]  Under the new

regulations, "an ALJ's 'duty' to recontact a medical source [has] changed." *Borgsmiller v. Astrue*,

499 F. App'x 812, 816, n.4 (10th Cir. 2012) (unpublished).  Rather than a requirement, at the time

the ALJ issued her decision, the regulations stated that an ALJ *may* recontact a medical source,

among other options, if the evidence is inconsistent or insufficient.  20 C.F.R. §§ 404.1520b(c);

416.920b(c) (Effective Mar. 26, 2012 to Mar. 26, 2017).

Plaintiff does not argue that the evidence is inconsistent.  Instead, he argues that Dr. Al-

Botros' opinion is insufficient.  Under the regulations, evidence is insufficient if the ALJ cannot

reach a conclusion as to whether a claimant is disabled after weighing the submitted evidence.  *Id.*

The ALJ considered various medical records and opinions related to his mental impairments,

determined Plaintiff's RFC, and ultimately found he was not disabled.  In other words, the ALJ

determined he had sufficient information to conclude whether Plaintiff was not disabled.  As such,

the ALJ did not err by not re-contacting Dr. Al-Botros.  *See Lewis v. Colvin*, No. 13-1266-SAC,

2014 WL 4723106, at *3 (D. Kan. Sept. 23, 2014) (finding ALJ did not err by failing to recontact

a treating physician who only opined on the ultimate issue of disability where the ALJ did not find

the evidence to be insufficient to determine disability and relied on other opinions).

---

[11] The previous text of both 20 C.F.R. §§ 404.1512(e); 416.912(e) stated in part:

> When the evidence we receive from your treating physician . . . is
> inadequate for us to determine whether you are disabled, we will
> need additional information to reach a determination or a decision.
> To obtain the information . . . we will first recontact your treating
> physician or psychologist or other medical source to determine
> whether the additional information we need is readily available."

Subsection "e" of each regulation now addresses obtaining a consultative examination, which is
not the subject of an argument Plaintiff advances.

### 4. Non-Acceptable Opinions

Plaintiff also alleges error in the ALJ's consideration of the opinions from non-acceptable medical sources—his treating case management mental health provider, Megan Wurzer, BSW, CM, PSRS, and a counselor, Jim Womack, M.A., L.P.C. Candidate. Pl.'s Br. 7-8. An ALJ "generally should explain the weight given to opinions" from non-acceptable medical sources "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939, at *6. Here, the ALJ adequately explained her reasoning for giving minimal weight to the opinions of Ms. Wurzer and Mr. Womack.

In a December 29, 2008 letter, Ms. Wurzer opined that Plaintiff had been diagnosed with Panic disorder without agoraphobia and posttraumatic stress disorder on December 5, 2008, "which may limit their [sic] ability to obtain and/or maintain employment." AR 487, 651. The ALJ noted this opinion and found that "this statement from a non-acceptable medical source is given minimal weight or consideration as being speculative without identifying any specific limitations or restrictions." AR 748. Here, the ALJ explained the reason he was giving minimal weight to the opinion, and those reasons appear to be supported by substantial evidence. The opinion was speculative, as she contends Plaintiff "may" be limited in his ability to work. Further, as addressed by the ALJ, the opinion does not contain any limitations or restrictions and therefore amounts to an opinion on the ultimate issue of disability, an issue reserved for the Commissioner.[12]

---

[12] Plaintiff argues that "the proper fashion is to apply" the factors for weighing acceptable medical sources. To the extent he contends the ALJ erred by not addressing each of the factors, such an argument fails. So long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Mr. Womack submitted a medical source statement dated January 6, 2010, in which he noted limitations that were "marked or greater" in the ability to understand and remember detailed instructions, as well as in the area of attention and concentration. AR 493-495. The ALJ noted that Mr. Womack "asked each question of [Plaintiff] and recorded his answers as he rated himself in each category." AR 494, 749. Further, the ALJ found that "as a non-acceptable medical source, the statement of Mr. Womack is given minimal weight or consideration as reflecting [Plaintiff's] subjective statements rather than any clinical opinion." It is unclear whether the limitations contained in Mr. Womack's report amount to an opinion at all, as Mr. Womack stated: "As a clinician[,] I asked each question of [Plaintiff] and recorded his answer as he rated himself in each category." AR 494. Thus, the opinion is better attributed to Plaintiff than to Mr. Womack. Nevertheless, the ALJ explained her reasoning for giving the opinion minimal weight, and such reasoning is supported by substantial evidence.[13]

### B. The ALJ Did Not Err in the Analysis of Plaintiff's Symptoms

Plaintiff argues the ALJ erred when she evaluated Plaintiff's symptoms and subjective complaints.[14] Pl.'s Br. 13-15. The Court will not disturb an ALJ's evaluation of a claimant's symptoms if they are supported by substantial evidence because such "determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir.

---

[13] Plaintiff also argues that when the opinions are "read together with Dr. [Stephanie] Crall's records, . . . at a minimum, a limitation for unskilled work should have been provided." Pl.'s Br. 8. The ALJ reviewed Dr. Crall's records, AR 742, and the Court refrains from reweighing the evidence. *Bowman*, 511 F.3d at 1272.

[14] Plaintiff refers to this as an error regarding his "consistency," but it is clear from the argument and citations that she is referring to an evaluation of Plaintiff's symptoms and subjective complaints.

2008) (*citing Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).[15] An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (*citing Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)). The ALJ may consider a number of factors when evaluating a claimant's symptoms, including: objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; medication used by the claimant for relief of pain or other symptoms; and other measures utilized by the claimant to relieve pain. *See* 20 C.F.R. § 416.929(c).

Plaintiff first argues that the ALJ's finding regarding her symptoms was impermissibly vague due to its boilerplate language. Pls.'s Br. 13-14. While the ALJ's initial paragraph discussing Plaintiff's symptoms contained boilerplate language, she continued her discussion to address the factors contained in the regulations and cited evidence to support her findings. AR 746-747. Thus, the ALJ's findings were not impermissibly vague.

Plaintiff next contends the ALJ erred when addressing Plaintiff's activities of daily living because "she did not explain how these activities translated to a full-time job at the light level." Pl.'s Br. 14. Despite Plaintiff's claims that he is unable to work full-time due to aching and weakness in his bones as well as issues related to depression and anxiety, the ALJ noted that Plaintiff was able to travel in a car to and from California without stopping, is able to take care of

---

[15] In both *Cowan* and *Diaz*, the Tenth Circuit utilized the term "credibility" to describe the process of evaluating an individual's statements about pain or other symptoms. The use of the term "credibility" was in line with the language used in previously applicable Social Security Rulings. *See, e.g.,* SSR 96-7p, 1996 WL 374186. The currently applicable Social Security Ruling removed the use of the term "credibility" to align with the regulations which do not utilize the term and clarify "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, at *2, 2017 WL 5180304. The general rule regarding the amount of deference to give an ALJ's evaluation of a Plaintiff's statements about pain or other symptoms need not be disturbed.

his personal hygiene, and reads often.  AR 746.  In other words, the ALJ considered Plaintiff's activities of daily living and determined they supported a finding that Plaintiff's symptoms were not as severe as he stated.  As noted above, the Court will not disturb Plaintiff's symptom analysis when it is supported with substantial evidence.

Plaintiff also argues that the ALJ improperly considered inconsistencies between his 2013 and 2016 testimony.  Pl.'s Br. 14-15.  The ALJ noted various inconsistencies in her summary of Plaintiff's testimony, including:

- In his 2016 testimony, Plaintiff testified that he denied using his computer, the computers of his relatives, or his smartphone for internet access since 2009. But in 2013, Plaintiff testified he had email and Facebook accounts.  The ALJ found this discrepancy suggested Plaintiff "may have been somewhat less than forthcoming in his current testimony."  AR 744.

- In 2016, Plaintiff testified that prior to a recent medication adjustment, he used to stay in bed nine or ten times per month and had panic attacks five-to-six times per month.  In 2013, Plaintiff testified that he did not want to get out of bed "a couple times per month" and that he was having panic attacks about once per month.  The ALJ noted that the discrepancy suggested exaggeration on the part of Plaintiff.  AR 745.

- In 2016, Plaintiff testifies he shopped with his son twice a month and shopped alone every two months.  In 2013, Plaintiff testified he went three times per month to go shopping.  The ALJ found that this indicated Plaintiff "may not have a good recall of his functional abilities for the entire period for adjudication since December of 2009."  AR 745.

Plaintiff argues that "common sense would dictate that fluctuation in conditions between the two hearings are expected," and that assuming Plaintiff is not being forthright is improperly speculative. Pl.'s Br. 15.

Plaintiff is correct that a claimant's symptoms can be different at two separate points in time. Indeed, SSR 16-3p states that "inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate" as "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." SSR 16-3p, 2017 WL 5180304, at *9. But, the ALJ did not address the inconsistencies regarding Plaintiff's computer usage, days spent in bed, and panic attacks to indicate that Plaintiff was inaccurate as to his current condition. Instead, the ALJ utilized those portions to bring attention to the fact that Plaintiff's current testimony about his *prior condition* was belied by his prior testimony. While Plaintiff may have had legitimate reasons for his differing ability to shop in 2013 and 2016, the Court notes that the ALJ did not address this inconsistency in her analysis of Plaintiff's activities of daily life when making a final determination as to the severity of Plaintiff's symptoms. AR 746-747. The Court finds no error with regard to the ALJ's consideration

**C. The ALJ Did Not Err at Step Four**

Plaintiff contends the ALJ erred at Step Four. The Step Four analysis consists of three phases: (1) the ALJ evaluates the claimant's physical and mental RFC; (2) the ALJ determines the physical and mental demands of a claimant's past relevant work; and (3) the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite his or her

mental and physical limitations. *See Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). Plaintiff alleges error at the first and second phases of the Step Four analysis.[16]

### 1. Phase One – RFC

Plaintiff argues the ALJ erred in formulating the RFC. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* at *1. The Court finds no error in the RFC.

Plaintiff asserts that because the ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace at Step Three, the RFC should have contained additional limitations regarding Plaintiff's ability to complete a workday or maintain a job. Pl.'s Br. 11. She contends the "ALJ must consider [psychiatric review technique] findings, in her hypothetical to the VE." *Id.* The ALJ, however, appropriately considered his findings from Step Three. Just after finding Plaintiff had moderate difficulties in this area, she found that Plaintiff "is able to perform a wide range of simple and some complex tasks." AR 737. The ALJ adopted this limitation in the RFC and in the hypothetical question posited to the VE. AR 738, 795. Further, in the Tenth Circuit "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (finding that when the plaintiff had moderate limitations, it was permissible for the ALJ to account

---

[16] Plaintiff alleges a Step Five error, arguing he cannot perform the jobs identified by the ALJ. Pl.'s Br. 12-13. The root of the alleged error, however, is that the ALJ did not appropriately formulate the RFC. Therefore, the alleged step-five error is considered in this section.

for those limitations in terms of the types of tasks the plaintiff could perform). Thus, Plaintiff's allegation does not have merit.

Plaintiff also contends the ALJ did not include limitations related to his panic disorder. Pl.'s Br. 11-12. He argues that if the ALJ had included limitations related to his panic disorder, he would not have been able to perform his past relevant work as a customer service representative or apartment manager because they require significant interaction with data and people. *Id.* The ALJ considered Plaintiff's panic disorder to be a severe impairment. AR 735. The ALJ thoroughly considered the medical evidence and opinions contained in the record and properly considered the severity of Plaintiff's reported symptoms. AR 738-750. Specifically, the ALJ addressed medical evidence—including inpatient and outpatient care—regarding Plaintiff's mental impairment, prescribed medications, and reported symptoms. AR 741-743. Ultimately, the ALJ determined that Plaintiff was limited to simple and some complex tasks with routine supervision to account for Plaintiff's mental limitations. AR 738. In making this argument, Plaintiff cites to no medical opinion or other evidence indicating that Plaintiff would have difficulty interacting with people or data. The Court will not reweigh the evidence to make an alternate finding. *See Bowman*, 511 F.3d at 1272.

Plaintiff also argues that "there was not testimony as [to] what impact a sit-stand opinion would have on the customer-service representative position," as opined by Dr. Saidi and Dr. Chaudry. Pl.'s Br. 11-12. The ALJ, however, did not include a sit-stand option in the RFC, and the Court has already determined that the ALJ did not err in her consideration of Dr. Saidi and Dr.

Chaudry's opinions on the issue. The Court will not reweigh the evidence with regard to a stand/sit option. *See Bowman*, 511 F.3d at 1272.[17]

Finally, Plaintiff contends that she should be awarded benefits pursuant to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the grids). She contends Rule 201.14 governs, which applies to individuals limited to sedentary work, closely approaching advanced age, who are high school graduates or more (not providing for direct entry into skilled work), who previously worked in skilled or semiskilled work and do not have transferrable skills. The grids are intended to help ALJs make uniform, efficient decisions about the types and numbers of jobs existing in the national economy for certain classes of claimants. *Heckler v. Campbell*, 461 U.S. 458, 468 (1983). The grids apply, however, "only when they describe a claimant's abilities and limitations accurately." *Id.* 461 U.S. at 462 n. 5; *see also Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). Here, the grids do not apply because Rule 201.14 does not accurately describe Plaintiff's abilities and limitations. Although, Plaintiff made unsuccessful arguments to the contrary, the ALJ did not find Plaintiff is limited to sedentary work and the ALJ found Plaintiff has transferrable skills. As such, Grid Rule 201.14 is inapplicable.

Plaintiff has failed to show the ALJ improperly formulated the RFC or otherwise erred at phase one.

---

[17] In one sentence, Plaintiff also notes that both of the positions contained in Plaintiff's past relevant work that the ALJ found Plaintiff can perform require frequent handling, which is in conflict with Dr. Chaudry's opinion. Pl.'s Br. 11. The Court does not find this one sentence argument to be developed and will not consider it herein. *See Strickland v. Astrue*, 496 F. App'x 826, 835 (10th Cir. 2012) (unpublished) ("We do not address the issue because this one-sentence statement does not adequately develop the argument."). Furthermore, Plaintiff challenged the ALJ's consideration of Dr. Chaudry's opinion, but only on issues relating to Plaintiff's ability to sit, stand, and walk during the workday. Pl.'s Br. 8-9; Pl.'s Reply Br. [Doc. No. 22], at 2.

## 2. Phase Two – Mental Requirements of Past Relevant Work

Plaintiff contends the ALJ erred at step two. Specifically, he argues the ALJ failed to determine the mental requirements of her past relevant work. Pl.'s Br. 9-12. As a result, according to Plaintiff, the VE made "the RFC determination in her own head, leaving nothing for the Court to review." *Id.* at 10. The Court finds no error with regard to the phase two analysis.

The RFC in this matter limits Plaintiff to perform simple and some complex tasks with routine supervision. AR 738. The ALJ posed a hypothetical to the VE including that limitation. AR 795. The VE testified that Plaintiff could perform the occupations of apartment manager and customer service representative, both as Plaintiff performed it and, citing DOT numbers, as performed in the general economy. AR 793, 795-796. In the decision, the ALJ noted the VE's testimony and determined Plaintiff could perform those jobs. AR 751. The ALJ also confirmed that the VE's testimony was consistent with the Dictionary of Occupational Titles.

This analysis is sufficient to satisfy phase two of the step-four analysis. *See Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003) (finding that after the ALJ noted the VE's findings that the plaintiff's past relevant work was light and either unskilled or semiskilled, "the ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis"); *Adcock*, 2018 WL 4760095, at *5 (finding an ALJ's analysis sufficient where the ALJ expressly told the VE the claimant's limitations, the VE responded that the claimant could perform her past jobs, the ALJ

cited the VE's testimony with approval, and the ALJ confirmed the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles).[18]

The Court concludes the ALJ did not err in her analysis at phase two of the Step Four analysis.

## VI.   Conclusion

For the reasons set forth, the decision of the Commissioner is AFFIRMED.

ENTERED this 5th day of October, 2018.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

---

[18] Citing *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished), Plaintiff argues that the VE erred by characterizing Plaintiff's past relevant work as "semi-skilled" or "skilled" because it does not account for the mental demands of potential jobs.  Pl.'s Br. 10. *Wiederholt*, however, found error due to the ALJ's failure to include all of the limitations contained in the RFC in the hypothetical to the VE.  *Wiederholt*, 121 F. App'x, at 839.

The other case cited by Plaintiff, *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at *2 (10th Cir. 1996) (unpublished), stands for the proposition that an RFC limiting a Plaintiff to "unskilled" work is not proper, not for the proposition that a VE cannot classify past relevant work as being unskilled (or "skilled" and "semi-skilled" as the VE did herein).